UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY A. DIMAURO,

    Plaintiff,

       v.                                                                  No. 3:16-cv-1329(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## **RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Mary DiMauro's, application for Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 18]. The Commissioner, in turn, has moved for an order affirming her decision. [Doc. # 19]. After careful consideration of the

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

arguments raised by Plaintiff, and thorough review of the administrative record, the Court affirms the Commissioner's decision.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

**a. Facts**

Plaintiff filed her SSI application on November 8, 2012. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On September 16, 2014, a hearing was held before administrative law judge Brian Curley ("the ALJ"). On October 16, 2014, the ALJ issued a decision denying Plaintiff's claim. Plaintiff then sought review with the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed.

Plaintiff has a twelfth grade education and is fluent in English. (R. 285). She was forty-seven years old on the date the SSI application was filed. (R. 138). She has not worked since 1999. (R. 434). Plaintiff alleges disability as a result of a combination of mental and physical impairments.

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 25]. The Court adopts this stipulation and incorporates it by reference herein.

**b. The ALJ's Decision**

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the

3

Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the SSI application date. (R. 132). At Step Two, the ALJ found Plaintiff has the following severe impairments: bipolar disorder; major depressive disorder; anxiety disorder; and personality disorder. (R. 132). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 133-34). Next, the ALJ determined Plaintiff retains the following residual functional capacity[2]:

> Plaintiff can perform a full range of work at all exertion levels but with the following non-exertional limitations: She can understand, remember, and carry out very short, simple, and routine one to two step tasks. She can maintain concentration, persistence, and pace for two-hour periods in a work environment that is goal-oriented without strict time or production demands. She can accept instructions and respond appropriately to criticism from supervisors. She can get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She can adapt to minor changes, avoid hazards, travel independently, and make simple plans. She is not suited to close work with the public. She must be in close proximity to a restroom.

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

(R. 135-38). At Step Four, the ALJ found Plaintiff has no past relevant work. (R. 138). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 138). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform the positions of dishwasher, hand packager inspector, and price marker. (R. 139). Accordingly, the ALJ found Plaintiff not to be disabled.

## DISCUSSION

Plaintiff makes several arguments in support of her position that the ALJ's decision should be reversed. The Court will address these points in turn.

### 1. Evaluation of Opinion Evidence

Plaintiff first argues that the ALJ deficiently analyzed the medical opinion evidence. The ALJ must analyze medical opinions, along with the other evidence of record, when determining a claimant's RFC. When weighing opinion evidence, a treating source's opinion on the nature or severity of a claimant's impairments should be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's

5

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess*, 537 F.3d at 129. An ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand. *Halloran*, 362 F.3d at 33.

In her appeal, Plaintiff asserts that the ALJ's analysis of the opinion signed by Keely Reed, MSW and supervising psychiatrist Steven Madonick, MD was deficient, and that the opinion should have been afforded controlling weight. In September 2014, Ms. Reed and Dr. Madonick completed a Mental Impairment Questionnaire. They identified Plaintiff's diagnoses as bipolar disorder and anxiety disorder, commenting that in order to maintain "a functional baseline she must be compliant with attendance to therapy and medication review appointments as well as medication compliant." (R. 783). Ms. Reed and Dr. Madonick found Plaintiff was unable to maintain a satisfactory level of functioning in activities of daily living, social interaction, and task performance. (R. 784-85). They also assessed extreme functional limitations in these realms. (R. 786). Ms. Reed and Dr. Madonick opined that Plaintiff was not able to perform work on a full-time basis. (R. 785).

The ALJ gave the opinion of Ms. Reed and Dr. Madonick little weight because it was "grossly out of proportion with treatment records … [and] a facially extreme and unsupported statement of function." (R. 137).

The Court has painstakingly reviewed the record and finds there is no error in the ALJ's decision to give little weight to this opinion. There is significant evidence to support the ALJ's assessment that the opinion is unsupported by other evidence in the record. Specifically, during the relevant period, treatment notes describe Plaintiff as having normal mood; good hygiene; good concentration and attention; organized thought process; and unimpaired impulse control.

6

(R. 618). On several other occasions, Plaintiff was observed as having organized and relevant thought process; good attention, concentration, and memory; and fair insight and judgment. (R. 628, 671, 792). In terms of social functioning, the record shows Plaintiff was able to have a normal conversation with a Social Security Administration employee, displaying no difficulties talking, understanding, concentrating, and answering questions. (R. 448). She was observed as polite, pleasant, cooperative, and calm. (R. 628). It was also noted that Plaintiff was well-stabilized on medication. (R. 618, 792). In fact, the opinion of Ms. Reed and Dr. Madonick is belied by other assessments Ms. Reed conducted. On June 9, 2014, Ms. Reed completed a rating of Plaintiff's abilities in several areas, including in communication, problem solving, behavioral norms, productivity, personal hygiene, coping skills, and social network. (R. 766). Ms. Reed did not rate Plaintiff's limitations in any area as extremely severe, severe, or moderately severe. (R. 766).

Plaintiff maintains that because Ms. Reed's and Dr. Madonick's opinion is supported by the opinion of the consultative examiner, it should have been afforded greater weight. In November, 2013, Charles Vassilopoulos, Ph.D., conducted a consultative examination of Plaintiff. He concluded her prognosis was poor. (R. 661). He opined she could understand, remember, and carry out simple instructions. (R. 661). Dr. Vassilopoulos found Plaintiff was severely impaired in her ability to make simple and complex work-related judgments, and in responding appropriately to usual work situations and changes in routine work settings. (R. 661). He opined she was moderatly impaired in her ability to interact with the public, supervisors, and coworkers. (R. 661). Dr. Vassilopoulos further found Plaintiff was mildly impaired in her ability to remember and understand complex instructions. (R. 661).

7

The ALJ characterized Dr. Vassilopoulos's opinion as an "aberration" in comparison to Plaintiff's treatment history, found it poorly supported by the record, and accorded it "little weight overall." (R. 137).

The treatment notes discussed above – which are inconsistent with the restrictive opinion of Ms. Reed and Dr. Madonick – are likewise unsupportive of the extreme limitations to which Dr. Vassilopoulos opines. Consequently, the Court simply cannot say that substantial evidence does not support the ALJ's assessment of the opinion of Ms. Reed and Dr. Madonick.

The treatment notes instead support the ALJ's finding that Plaintiff's treatment "has been effective in stabilizing her mental health condition to the degree that she displayed few clinical signs or symptoms that would reasonably support work-related limitations." (R. 137). The opinions of the state agency medical consultants lend additional support to the ALJ's finding. The consultants each reviewed the evidence of record and agreed that Plaintiff can understand, remember, and carry out at least simple, routine one to two-step tasks with adequate concentration, persistence, and pace for two-hour periods in a normal work week; is best suited to a setting without strict time or production demands; is not suited to close work with the public; is otherwise able to relate for simple task purposes; can adapt to minor changes, avoid hazards, travel, and make simple plans. (R. 316-17, 329-31). The ALJ gave the opinions of the state agency medical consultants significant weight, reasoning that their opinions were consistent with the medical evidence, and they were experts in disability assessment. (R. 138).

It is well-established that the opinion of a non-examining source can override the opinion of a treating source when it is supported by the medical evidence. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations … permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.");

8

*Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (an ALJ can find a non-examining source's opinion "more reliable" than an opinion of a treating source).

Plaintiff also argues that the ALJ's failure to evaluate opinion evidence from Jessica Resnickoff, LSCW, and Steven Alloy, MD, is reversible error. Ms. Resnickoff and Dr. Alloy completed a Mental Impairment Questionnaire on November 22, 2011. In the area of activities of daily living, they found Plaintiff had an obvious problem in using appropriate coping skills and handling frustration; a slight problem in using good judgment; and no problem in taking care of personal hygiene and physical needs. (R. 553). Ms. Resnickoff and Dr. Alloy found no serious or very serious problems in this category. (R. 553). In the area of social interaction, Ms. Resnickoff and Dr. Alloy found Plaintiff had no problem interacting with others in a work environment; a slight problem in responding to authority; and an obvious problem asking questions or requesting assistance and getting along with others without distracting them or exhibiting behavioral extremes. (R. 554). Again, no serious or very serious problems were noted. (R. 554). In the area of task performance, Ms. Resnickoff and Dr. Alloy found a slight problem with carrying out single-step instructions, focusing, changing from one simple task to another, and performing basic work activities at a reasonable pace. (R. 554). They found an obvious problem with carrying out multi-step instructions and performing work on a sustained basis. (R. 554). And, again, no serious or very serious problems were observed. (R. 554).

The record contains another Mental Impairment Questionnaire completed by Ms. Resnickoff only in 2011. She found no problems, slight problems, or obvious problems in the categories of activities of daily living, social interaction, and task performance; a serious problem in carrying out multi-step instructions; and no very serious problems. (R. 558-60).

The Court finds no error in the ALJ not specifically discussing the Ms. Resnickoff and Dr. Alloy opinions for two reasons. First, the opinions were rendered prior to the period at issue before the ALJ. The relevant period in this case began with Plaintiff's November 8, 2012 SSI application. SSI benefits are not payable for any month prior to the month in which the application was filed. *See* 20 C.F.R. § 416.335; *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 (2d Cir. 2012) (explaining that the relevant period in an SSI appeal is from the date the SSI application was filed through the date of the ALJ's decision). Second, even if these opinions had been considered, the outcome would not change. It is unclear how these opinions are actually inconsistent with the RFC assessed. Without a persuasive showing otherwise, the Court will not order remand on the basis of the ALJ's failure to explicitly mention the opinions of Ms. Resnickoff and Dr. Alloy.

In sum, substantial evidence supports the ALJ's evaluation of the opinion evidence and the assessed RFC.

### 2. Evaluation of Physical Impairments

Plaintiff next argues that the ALJ erred by not addressing Plaintiff's physical impairments, specifically her pelvic pain. This argument must fail.

At Step Two, the ALJ determines the "severity" of a claimant's impairments. Pursuant to the regulations, a medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at \*5 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)); *see also* SSR 85-28; 20 C.F.R.

§ 416.922. "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While the second step of the evaluation process is limited to screening out *de minimis* claims, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (internal quotation marks omitted).

Here, there appears to be no dispute as to the severity of Plaintiff's pelvic pain: The ALJ's decision mentions Plaintiff's physical impairments, and ultimately concludes they are nonsevere, and, in her brief, Plaintiff concedes that her pelvic pain is nonsevere. Since there is no indication that Plaintiff's pelvic pain significantly limits her ability to perform basic work tasks, the ALJ's failure to specifically mention it cannot be the basis for remand.

Further, an ALJ's finding that an impairment is not severe at Step Two is harmless error when, as here, the ALJ finds other severe impairments and continues with the sequential evaluation, considering the combined impact of all impairments. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). In such a circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps." *Id.*

The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments and the incorporation of these impairments into the RFC.

### 3. Development of the Record

Next, Plaintiff asserts that the ALJ failed to adequately develop the administrative record. Specifically, she argues that the record is devoid of any treatment notes from December 28, 2011

11

to February 5, 2013, and this constitutes an impermissible gap in the medical evidence. The Court disagrees.

While the ALJ does indeed have a duty to develop the record, this duty is not limitless. "[T]he ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to sustain that conclusion under the applicable standard." *Knight v. Astrue*, 32 F. Supp. 3d 210, 222 (N.D.N.Y. 2012) (citing *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir.1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citations omitted)).

Although there is a period of time for which there are no treatment notes, this does not amount to an obvious gap in evidence for the relevant period. As explained above, the relevant period in this case began with the November 8, 2012 SSI application. Thus, there is, at most, a three month period during which no records were submitted. Even more, the ALJ had before him a complete medical history consisting of records from treatment providers, several medical source statements, the report from the consultative examiner, the reviews of two state agency medical consultants, and Plaintiff's own statements about her impairments and ability to function. The Court simply cannot say this amounts to an obvious gap such that the ALJ neglected his duty to develop the record.

**4. Step Five Analysis**

Finally, Plaintiff challenges the ALJ's finding at the fifth step in the evaluation process. At Step Five, the Commissioner must show the existence of work in the national economy that a claimant can perform. 20 C.F.R. § 416.960(c). To satisfy this burden, "[a]n ALJ may rely on a

vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and [the hypotheticals] accurately reflect the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (internal quotation marks and citations omitted).

Plaintiff first argues that the hypothetical question posed to the VE did not accurately portray Plaintiff's impairments. Since the Court has already determined that substantial evidence supports the RFC, and the hypothetical to the VE accurately communicated the RFC, this argument cannot prevail.

In addition, Plaintiff asserts that the positions the ALJ found she can perform are insufficient to meet the Commissioner's Step Five burden. The VE identified three positions that Plaintiff can perform. Plaintiff argues that all three of these positions have a reasoning level of two, which exceeds the RFC's limitation to very short, simple, and routine one to two step tasks.

The *Dictionary of Occupational Titles* lists jobs appropriate for individuals with specific levels of reasoning development, ranging from level one (the lowest level of development) to level six (the highest level). Jobs with a reasoning level of two require a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to] [d]eal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appendix C, available at https://occupationalinfo.org/appendxc_1.html#III. Courts in this circuit have routinely found that a limitation to short, simple tasks or instructions is consistent with reasoning level two. *See Jones-Reid*, 934 F. Supp. 2d at 408; *Lofton v. Colvin*, No. 3:13-CV-528 JBA, 2015 WL 2367692, at *27 (D. Conn. May 13, 2015); *Carrigan v. Astrue*, No. 2:10-CV-303, 2011 WL 4372651, at

13

*11 (D. Vt. Aug. 26, 2011), *report and recommendation adopted,* No. 2:10 CV 303, 2011 WL 4372494 (D. Vt. Sept. 19, 2011). Accordingly, there is no error here.

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

## Conclusion

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this  15th  day of August, 2018, at Bridgeport, Connecticut.

       */s/ William I. Garfinkel*
       WILLIAM I. GARFINKEL
       United States Magistrate Judge